UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH COUNTY COMMUNICATIONS CORPORATION, a California corporation,<br><br>                                    Plaintiff,<br><br>    vs.<br><br>SPRINT SPECTRUM, L.P., a Delaware limited partnership; NEXTEL OF CALIFORNIA, INC., a DELAWARE corporation,<br><br>                                    Defendants. | CASE NO. 09cv2782 DMS (RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SIXTH CLAIM FOR DECLARATORY RELIEF**<br><br>**[Docket No. 11]** |

This case comes before the Court on Defendants' motion to dismiss Plaintiff's sixth claim for relief. Plaintiff filed an opposition to the motion, and Defendants filed a reply. After thoroughly considering these memoranda and the relevant legal authority, the Court grants Defendants' motion to dismiss.

**I.**

**BACKGROUND**

On February 10, 2010, Plaintiff filed its First Amended Complaint ("FAC"). This filing coincided with the Ninth Circuit's decision in *North County Commc'ns Corp. v. California Catalog & Tech*, 594 F.3d 1149 (9th Cir. 2010). The FAC alleges Plaintiff is a competitive local exchange carrier ("CLEC") that provides switched local exchange, exchange access, and other

telecommunications service in, among other states, California. (FAC ¶ 8.) In addition, the FAC alleges Defendants are commercial mobile radio service providers ("CMRS") as defined by the Federal Communications Act of 1934 and are operating within the regulations implemented by the Federal Communication Commission ("FCC") section 332.[1] (FAC ¶ 10.) Plaintiff alleges that Defendants' customers have called Plaintiff's customers and their calls have been properly terminated by Plaintiff and in turn reasonable compensation is warranted for this service. (FAC ¶¶ 17-22.) Plaintiff's sixth claim for declaratory relief incorporates allegations contained in paragraphs 1 through 50 of their FAC, but not paragraphs 51 through 91. (FAC ¶ 92.) The sixth claim seeks declaratory relief as follows:

> Plaintiff is entitled to be compensated for the termination of the traffic which the Defendants sent and continue to send to the Plaintiff's end-users, and Plaintiff is informed and believes that the Defendants unreasonably contend otherwise. An actual controversy exists between the parties. A judicial declaration of the parties' respective rights and obligations is necessary and proper, and such a declaration is in furtherance of justice. Accordingly, Plaintiffs request a judicial declaration stating that (1) the number of calls and the number of minutes originating on the Defendants' networks and terminated on the Plaintiff's network up through the time of trial, (2) that the Plaintiff is entitled to receive compensation for the termination of calls to Plaintiff's end-users which originate on the Defendants' networks, and (3) that the Defendants are required to commit to compensate Plaintiff at a rate to be determined by court or appropriate administrative agency.

(FAC ¶ 94.)

On March 3, 2010, the parties jointly agreed that the ruling in *NCC* would affect the claims alleged by Plaintiff in this complaint. (Joint Mot. to Extend at 1:18-22.) Plaintiff stated it would evaluate whether an amended complaint should be filed. (*Id.* at 1: 23-24.) Ultimately, Plaintiff elected not to amend its complaint, prompting Defendants to file the present motion.

## II.

## DISCUSSION

Defendants raise several arguments in support of their motion to dismiss Plaintiff's sixth claim for declaratory relief. First, Defendants assert that the ruling in *NCC* is controlling as to whether Plaintiff's sixth claim for declaratory relief should be dismissed. Second, Defendants argue that

---

[1] The Federal Communications Act of 1934 was amended by the Federal Communications Act of 1996.

1  Plaintiff's sixth claim seeks relief under federal telecommunications law, not general contract law.
2  Finally, Defendants reason that the joint motion to extend between the two parties gave Plaintiff notice
3  and a reasonable amount of time to amend their claim for declaratory relief to avoid potential conflict
4  with the holding in *NCC*.

5  **A.     Standard of Review**

6  In two recent opinions, the Supreme Court established a more stringent standard of review for
7  12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v.*
8  *Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint
9  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
10 its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility
11 when the plaintiff pleads factual content that allows the court to draw the reasonable inference that
12 the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

13 "Determining whether a complaint states a plausible claim for relief will ... be a context-
14 specific task that requires the reviewing court to draw on its judicial experience and common sense."
15 *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this
16 task "by identifying the allegations in the complaint that are not entitled to the assumption of truth."
17 *Id.* at 1951. It then considered "the factual allegations in respondent's complaint to determine if they
18 plausibly suggest an entitlement to relief." *Id.* at 1951.

19 **B.     *NCC v. CC&T***

20 In *NCC*, the Ninth Circuit addressed whether a private right of action existed under 47 U.S.C.
21 § 251(b) or 47 C.F.R. § 20.11(b) for plaintiffs to seek compensation in federal court from CMRS
22 providers. *North County Commc'ns Corp.*, 594 F.3d at 1155. Prior to the enactment of the 1996
23 Telecommunications Act and continuing thereafter, the FCC enumerated several rules to govern
24 connections between CLECs and CMRS providers. *Id*. at 1153. The FCC determined that 47 U.S.C.
25 § 251(b)(5) "obligates CLECs to establish reciprocal compensation arrangements for the exchange
26 of intraMTA [Major Trading Area] traffic between CLECs and CMRS providers." *Id*. The FCC stated
27 further that traffic originating and terminating within the same MTA was to be governed by reciprocal
28 compensation obligations under 47 U.S.C. § 251(b)(5), not interstate or intrastate access charges. *Id*.

Both 47 U.S.C. § 251(b)(5) and the FCC's reciprocal compensation rules reference an arrangement between CLECs and CMRS providers, however, neither addressed the specific type of arrangement necessary to trigger reciprocal compensation or what would result if no arrangement was organized prior to the exchange of traffic between CLECs and CMRS providers. *Id*.[2]

The plaintiff in *NCC* claimed that it was a CLEC, which provided "switched and non-switched local exchange, exchange access, and other telecommunication services to end users in California." *Id*. at 1153. The plaintiff alleged that the defendants were "CMRS and CLEC providers that offer[ed] calling plans allowing calls to areas serviced by [North County]." *Id*. The plaintiff sought a declaratory judgment that it was "entitled to be compensated for the termination of traffic which the Defendants sent and continue to send to [North County's] end users..." *Id*. The following issues were to be resolved by declaration of the court:

> (1) the number of calls and the number of minutes originating on the Defendants' networks and terminated on [North County's] network from April 29, 2005 up through the time of trial, (2) that [North County] is entitled to receive mutual compensation for the termination of calls to [North County's] end-users which originate on the Defendants' networks, and (3) that the Defendants are required to commit to compensate [North County] at a rate to be determined by the appropriate regulatory body, or else refrain from sending any traffic to [North County's] end-users....

*Id*. at 1153-54.

The Ninth Circuit held that it was not enough for the plaintiff to broadly proclaim it was entitled to compensation under the Federal Communication Act. *Id*. at 1155. The Ninth Circuit deferred to the FCC to "determine whether a particular practice constitutes a violation for which there is a private right to compensation." *Id.* at 1158. The FCC determined that issues regarding reciprocal compensation under 47 U.S.C. § 251(b) or 47 C.F.R. § 20.11(b) were to be governed by the appropriate state commission or administrative body, rather than the federal courts. *Id*. at 1157. Correspondingly, the Ninth Circuit held that absent a favorable determination by the FCC or a showing of Congressional intent in statutory language, plaintiffs could not assert a private claim for relief in federal court. *Id*. at 1155. Furthermore, the Ninth Circuit concluded that the regulatory and statutory language of 47 U.S.C. § 251(b) and 47 C.F.R. § 20.11(b) did not provide a private right of

---

[2]The FCC's reciprocal compensation rules include 47 C.F.R. § 20.11(b)

action for declaratory relief. *Id*. at 1156. Therefore, the plaintiff's declaratory judgment claim was dismissed because it lacked a favorable FCC determination and the necessary statutory footing to seek redress in federal court. *Id*. at 1162.

Plaintiff in the present action is the same plaintiff who sought declaratory relief in *NCC*.[3] Similar to its complaint in *NCC*, Plaintiff here alleges it is a CLEC that "provides switched local exchange, exchange access, and other telecommunications service in, among other states, California." *Compare* FAC ¶ 8 *with NCC*, 594 F.3d at 1153. Plaintiff also alleges, as it did in *NCC*, that Defendants are CMRS providers. *Compare* FAC ¶ 10 *with NCC*, 594 F.3d at 1153. Furthermore, the language of several portions of Plaintiff's FAC implies that Plaintiff seeks declaratory relief under both 47 C.F.R. § 20.11(b) and 47 U.S.C. § 251(b), the same statutes at issue in *NCC*. Plaintiff also states Defendants "were required to pay *reasonable compensation* to NCC in connection with NCC's terminating calls that originate on the Defendants facilities and/or from the Defendants' end users/customers. (FAC ¶ 22) (emphasis added). Similarly, Plaintiff, a CLEC, alleges it entered into an interconnection and reciprocal compensation agreement ("ICA") with Defendant Sprint, which set the "terms by which SPRINT and NCC interconnected, the rate to be paid for termination of traffic onto each other's network, and other material terms of interconnection and reciprocal compensation." (FAC ¶¶ 32-33.) Additionally, Plaintiff alleges that Defendant Nextel "knowingly sent traffic to NCC in the absence of an interconnection agreement or a reciprocal compensation arrangement providing for payment to NCC for terminating the calls originating by Defendant's end users/customers...." (FAC ¶ 41.) Plaintiff crafts paragraphs 32-33 and paragraph 41 by directly referencing the federal statutory requirement of "Reciprocal Compensation" under 47 U.S.C. § 251(b)(5). Lastly, Plaintiff seeks a declaration of its rights as outlined by paragraph 94 of the FAC. (*Id*. ¶ 94.) The language of

---

[3] This fact evinces that Plaintiff is aware of and understands the holding in *NCC* and would seek to avoid conflict with the holding by using language in its FAC that is analogous or identical to its complaint in *NCC*.

1  each issue the Plaintiff seeks to be resolved in paragraph 94 is analogous, if not identical, to that used
2  by Plaintiff in *NCC*[4].

3       In light of the substantial similarities between the claim at issue here and the claims at issue
4  in *NCC*, the Court concludes that the holding in *NCC* is controlling. That holding precludes Plaintiff
5  from bringing the sixth claim for relief absent a determination by the FCC that the practice at issue
6  here is unreasonable. Because Plaintiff has not met that standard, it has failed to state a valid claim
7  for declaratory relief.[5] Accordingly, Plaintiff's sixth claim is dismissed without prejudice.

## III.
## CONCLUSION AND ORDER

10       For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's sixth claim for
11  declaratory relief.

12  **IT IS SO ORDERED.**

13  DATED: June 24, 2010

15  HON. DANA M. SABRAW
    United States District Judge

---

[4] The first issue presented by Plaintiff, regarding the number of calls and number of minutes originating on the Defendants' network, uses identical language to that of the declaratory relief sought in *NCC*. *Compare* FAC ¶ 94 *with NCC*, 594 F.3d at 1153-54. The second issue sought by Plaintiff, regarding entitlement to compensation for call termination, is nearly identical to the language of *NCC*, except for the inclusion of the modifier "mutual" prior to and referring to "compensation". *Compare* FAC ¶ 94 *with NCC*, 594 F.3d at 1153-54. The third issue sought by the plaintiff, regarding the rate of compensation for services, is almost identical to the language in *NCC*, except for a minor deviation in its use of "appropriate regulatory body" as opposed to an "appropriate administrative agency" as utilized in *NCC*. *Compare* FAC ¶ 94 *with NCC*, 594 F.3d at 1153-54.

[5] In light of this holding, the Court declines to reach the balance of Defendants' arguments.